IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Laurie Fuentes, | ) |
| | ) |
| Plaintiff, | ) Case No. 23-cv-00971 |
| | ) |
| v. | ) |
| | ) |
| Northeast Illinois Regional Commuter | ) |
| Railroad Corporation, d/b/a Metra, | ) |
| James M. Derwinski, *in his individual capacity*, | ) |
| Marion Chemasko, *in her individual capacity*, | ) |
| and | ) |
| Gwen Reeves, *in her individual capacity*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

**Complaint**

For her Complaint against Defendants, Northeast Illinois Regional Commuter Railroad Corporation, d/b/a Metra, James M. Derwinski, *in his individual capacity,* Marion Chemasko, *in her individual capacity*, and Gwen Reeves, *in her individual capacity,* Plaintiff, Laurie Fuentes, states as follows:

**Parties**

1. Plaintiff, Laurie Fuentes, was formerly employed by Defendant, Illinois Regional Commuter Railroad Corporation, d/b/a Metra (hereinafter referred to as "Metra").

2. Metra is the commuter rail system in the Chicago metropolitan area serving the city of Chicago and its surrounding suburbs via the Union Pacific Railroad, BNSF Railway, and other railroads. The system operates 242 stations on 11 rail lines.

1

3. At all relevant times, James M. Derwinski was (and currently is) CEO/Executive Director of Metra. He is being sued in his individual capacity for money damages under 42 U.S. Code § 1983.

4. At all relevant times, Marion Chemaskow was (and is) Metra's Director of HR Operations. She is being sued in her individual capacity for money damages under 42 U.S. Code § 1983.

5. As of April 2022, Gwen Reeves was Metra's "Acting Lead Discipline Officer." She is being sued in her individual capacity for money damages under 42 U.S. Code § 1983.

**Jurisdiction and Venue**

6. This action arises under the laws of the United States, specifically the First and Fourteenth Amendments to the United States Constitution.

7. This action also arises under the laws of the State of Illinois, specifically the Illinois Religious Freedom Restoration Act, 775 ILCS 35, *et seq.*, the Illinois Health Care Right of Conscience Act, 745 ILCS 70, *et seq*; and the Illinois Human Rights Act, 775 ILCS 5/2-102.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)(2) because Metra is headquartered in the Northern District of Illinois, and the events giving rise to Fuentes' claims occurred in this District.

**Facts**

10. In September 2000, Fuentes became employed by Metra.

11. Fuentes worked for Metra in the Engineering Department, as a Traveling Janitor.

2

12. On March 20, 2020, Chicago's Mayor Lori Lightfoot announced a "Stay at Home" order because of COVID-19.

13. However, Fuentes was considered "essential" and, accordingly, was not ordered (or allowed) to "stay at home."

14. On November 1, 2021, Metra's CEO/Executive Director James M. Derwinski issued a "COVID-19 Vaccination[1] Mandate" for Metra employees.

15. Fuentes was not informed of the mandate until December 22, 2021.

16. On January 21, 2022, Fuentes submitted a request for religious exemption from the mandate.

17. In her request, Fuentes wrote that she had been a Christian her whole life (54 years) and that her request was based on her belief that her faith and the power of God would protect her; that her body is a temple; that God created her body and was the saviour of her body; and the Lord was her healer. She also cited 4 Bible verses.

18. Fuentes wrote: "I respect the Authority of Metra and my coworkers, my #1 duty is safety and I would never jeopardize my coworkers health or my own health. There for [sic] I will be willing to take a weekly Covid-19 test at my own expense. I am fully qualified to do the job Metra hired me for. Being unvaccinated should not be a reason that I get disqualified/terminated after 21 yrs of dedicated service."

19. On February 17, 2022, Metra's Reasonable Accommodations Committee denied Fuentes' request. The letter was not signed by any person.

---

[1] The Cambridge Dictionary definition of vaccine is "a substance that is put into the body of a person to protect them from a disease by causing them to produce antibodies." (https://dictionary.cambridge.org/us/dictionary/english/vaccine) Because the so-called "COVID-19 vaccines" do not protect people from contracting COVID-19, the word "vaccine" is arguably a misnomer, so Plaintiff will use the phrase in quotes throughout this Complaint.

3

20. On April 8, 2022, during an "investigation" hearing, Marion Chemasko, Director of HR Operations for Metra, revealed that Fuentes was denied exemption from the mandate because "we did not believe" that Fuentes' beliefs were "sincerely held."

21. On April 15, 2022, Metra's Gwen Reeves ("Acting Lead Discipline Officer"), who had been the hearing officer on April 8, 2022, terminated Fuentes, because she failed to provide proof that she was "fully vaccinated or [had] received at least one dose of a two-dose vaccine for COVID-19."

22. To the present day, Metra has not reinstated Fuentes, despite her consistent efforts to return.

**Count 1: First Amendment Violation (Free Exercise of Religion)
Against Derwinski, Chemasko, and Reeves**

23. Fuentes hereby realleges and adopts each and every allegation in paragraphs 1-22 as if fully set forth herein.

24. The Free Exercise Clause of the First Amendment to the United States Constitution (made applicable to the states by the Fourteenth Amendment) provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. CONST. amend. I.

25. Derwinski, Chemasko, and Reeves are all individually liable to Fuentes, under 42 U.S.C. §1983, for depriving Fuentes of her constitutional right to the free exercise of her religion (refusing to take a "COVID-19 vaccine" in violation of her religious beliefs). Each was personally involved in depriving Fuentes of her rights:

    a. Derwinski issued the policy that lacked any rational basis in the first place;

4

    b. Chemasko denied Fuentes' request for exemption and did so because she did not believe it was sincerely-held; and

    c. Reeves terminated her, after presiding over her discipline hearing, and knowing that her rights had been violated.

26. None of the individual defendants (indeed, no one at Metra) could have had any (rational) interest in requiring its employees to take a "COVID-19 vaccine," since these "COVID-19 vaccines" were never intended to prevent transmission of COVID-19.

27. It has been obvious ever since the "vaccines" became available to the American public in March 2021, *eight months* before Metra's mandate went into effect, that the "vaccines" do not, in fact, stop the transmission (i.e. "spread") of COVID-19.

28. Denying Fuentes' exemption request and terminating her for not accepting an injection that was never intended to stop (and after implementation, clearly did not stop) transmission of COVID-19 cannot survive even rational basis review.

29. In any event, strict scrutiny applies because:

    a. Metra's policy treated secular exemptions (i.e. "medical" exemptions) more favorably than religious ones: Metra granted 90%[2] of medical exemption requests, versus 82%[3] of religious ones.

    b. Therefore, its policy was not "neutral and generally applicable."

30. Strict scrutiny requires Defendants to prove they were furthering "interests of the highest order" by means "narrowly tailored in pursuit of those interests," i.e. prove that less restrictive measures could not address the interest in reducing the spread of COVID.

---

[2] 20/22
[3] 113/137

31. None of the individual Defendants can (indeed, no one at Metra could) satisfy strict scrutiny.

32. There existed no rational interest for implementing or enforcing an employee vaccine mandate, let alone any interest of the "highest order."

33. Moreover, Defendants could have used "less restrictive measures." Just one example is allowing Fuentes to take "a weekly Covid-19 test at [her] own expense," which Fuentes had expressly offered to do in her application for exemption.

34. As a result of Defendants' violations of her First Amendment rights, Fuentes has sustained damages including, but not limited to, lost income, lost bonuses, lost insurance, lost company benefits, and emotional distress.

35. Punitive damages should be awarded to punish the individual defendants and also to deter them from future violations of the First Amendment.

WHEREFORE, Plaintiff requests that Derwinski, Chemasko, and Reeves be found liable for violating the First Amendment and prays for relief as set forth in the Prayer for Relief below.

### Count 2: Violation of Fourteenth Amendment (Equal Protection) Against Derwinski, Chemasko, And Reeves

36. Fuentes hereby realleges and adopts each and every allegation in paragraphs 1-22 as if fully set forth herein.

37. The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons alike.

38. The individual Defendants have violated Fuentes' right to equal protection by granting religious exemption/accommodation requests to some similarly situated employees but denying the same to her.

39. The individual defendants have violated Fuentes' right to equal protection by continuing to employ other employees that are not vaccinated but refusing to continue to employ her.

40. Under the Equal Protection Clause, government actions which burden a fundamental right (Fuentes' right to practice her religion freely) and treat persons unequally based on an inherently suspect classification (her particular religious belief) are subject to strict scrutiny.

41. The individual Defendants cannot satisfy strict scrutiny with regard to what they did to Fuentes, as further detailed in Count 1.

42. Punitive damages should be awarded to punish the individual defendants and also to deter them from future violations of the Fourteenth Amendment.

WHEREFORE, Plaintiff requests that Derwinski, Chemasko, and Reeves be found liable for violating the Fourteenth Amendment and prays for relief as set forth in the Prayer for Relief below.

### Count 3: Illinois Human Rights Act[4]
### Against Metra

43. Fuentes hereby realleges and adopts each and every allegation in paragraphs 1-22 as if fully set forth herein.

44. Metra violated the Illinois Human Rights Act in at least 4 ways when it terminated Fuentes:

    a. Denial of reasonable accommodation for religion;

    b. Religious discrimination;

    c. Race discrimination; and

---

[4] Plaintiff has not included a parallel Title VII count because she is waiting on the right-to-sue from the Department of Justice.

   d. Age discrimination.

 45. The Illinois Human Rights Act provides:

"It is a civil rights violation: …[f]or any employer to impose upon a person as a condition of …retaining employment…any terms or conditions that would require such person to violate or forgo a sincerely held practice of his or her …religion…unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's….sincerely held religious belief, practice or observance without undue hardship on the conduct of the employer's business."

 46. Metra's application of its vaccinate mandate to Fuentes imposed on her a condition of employment (vaccination) that would have required her to violate her sincerely held religious beliefs.

 47. Fuentes made these beliefs well-known to her employer and requested an exemption from the mandate.

 48. Metra denied her request (and ignored her request to test herself instead).

 49. Metra would have experienced no hardship, let alone any *undue* hardship by allowing Fuentes to continue to work while "unvaccinated." Indeed, she worked "unvaccinated" from March 2020-February 2022, and she caused Metra no hardship during this time, while she was "unvaccinated."

 50. 137 Metra employees made requests for religious exemption.

 51. Only 24 were denied, Fuentes being one of them.

 52. Metra denied Fuentes because the HR Director did not "believe" that her beliefs were "sincerely held."

 53. Fuentes' religious beliefs are sincerely held; and Chemasko had no reason to doubt them.

 54. Every Metra employee Fuentes was aware of who was granted exemption was black; while Fuentes, who is white, was not.

8

55. Every Metra employees Fuentes was aware of who was granted exemption was younger than Fuentes, who was 55 years old at the time.

56. Plaintiff has satisfied administrative exhaustion requirements: she filed a charge with the Illinois Department of Human Rights ("IDHR") on November 4, 2022; the IDHR issued her the right to opt out of its investigatory procedures on January 30, 2023; and she is filing this lawsuit within 95 days thereof.

57. As a result of Metra's violations of the Illinois Human Rights Act (denial of religious accommodation and religious, race, and age discrimination), Fuentes has sustained damages including, but not limited to, lost income, lost bonuses, lost insurance, lost company benefits, and emotional distress.

WHEREFORE, Plaintiff requests that Metra be found liable for violating the Illinois Human Rights Act and prays for relief as set forth in the Prayer for Relief below.

### Count 4: Illinois Religious Freedom Restoration Act
### Against Metra

58. Fuentes hereby realleges and adopts each and every allegation in paragraphs 1-22 as if fully set forth herein.

59. The Illinois Religious Freedom Restoration Act provides:

"Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest."

60. Metra's "vaccine" mandate substantially burdened Fuentes' exercise of religion by conditioning her employment on her violating her religious beliefs.

9

61. Metra cannot meet its burden of demonstrating that its termination of Fuentes was in furtherance of a compelling governmental interest (as described in Count 1 above) and that it was the least restrictive means of furthering that interest (i.e. it could have let her test instead).

WHEREFORE, Plaintiff requests that Metra be found liable for violating the Illinois Religious Freedom Restoration Act and prays for relief as set forth in the Prayer for Relief below.

### Count 5: Illinois Healthcare Right of Conscience Act
### Against Metra

62. Fuentes hereby realleges and adopts each and every allegation in paragraphs 1-22 as if fully set forth herein.

63. The Illinois General Assembly has found and declared that people and organizations hold different beliefs about whether certain health care services are morally acceptable.

64. It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept health care services and medical care and to prohibit all forms of discrimination, disqualification, and coercion upon such persons by reason of their refusing to act contrary to their conscience or conscientious convictions in refusing to obtain, receive, or accept health care services and medical care.

65. It is unlawful for any person, public or private institution, or public official to discriminate against any person in any manner, because of such person's conscientious refusal to receive, obtain, accept, or participate in any way in any particular form of health care services contrary to her conscience.

66. Metra discriminated against Fuentes when they fired her for refusing to receive a "vaccine for COVID-19."

67. Fuentes demonstrated to Metra that taking the "vaccine for COVID-19" was contrary to her conscience.

68. As a result of Metra's violation of the Act, Fuentes has sustained damages including, but not limited to, lost income, lost bonuses, lost insurance, lost company benefits, and emotional distress.

WHEREFORE, Plaintiff requests that Metra be found liable for violating the Illinois Healthcare Right of Conscience Act and prays for relief as set forth in the Prayer for Relief below.

**Jury Demand**

Fuentes demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure

**Prayer For Relief**

WHEREFORE, Plaintiff, Laurie Fuentes, respectfully requests that the Defendants be found liable as delineated above, that judgment be entered against them, and that Fuentes be awarded all remedies to which she is entitled under the law, including, but not limited to:

a. back pay, including lost benefits;

b. reinstatement, at the same pay, seniority, and benefits to which she would have been entitled had she never been terminated (or, in the alternative, front pay and the value of future benefits);

c. "actual damages" in an amount to be proven at trial, including pain and suffering, but not less than $2,500 per violation, as provided by 745 ILCS 70/12;

d. treble (i.e. triple) her actual damages, including those for pain and suffering, as provided by 745 ILCS 70/12;

    e.    punitive damages against the individual Defendants, James M. Derwinski, Marion Chemasko, and Gwen Reeves;

    f.    reasonable costs and expenses of this action;

    g.    reasonable attorneys' fees;

    h.    expert fees; and

    i.    such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully Submitted by,

/s/ Julie Herrera
Law Office of Julie O. Herrera
159 N. Sangamon St., Ste. 200
Chicago, IL 60607
312-479-3014 (Phone)
708-843-5802 (Fax)
jherrera@julieherreralaw.com

Date: 2/16/23